**UNITED STATES of America, Appellee,**

v.

**José Antonio NUÑEZ–RODRIGUEZ, Defendant, Appellant.**

No. 95–1887.

United States Court of Appeals, First Circuit.

Heard Feb. 27, 1996.

Decided Aug. 14, 1996.

Rafael F. Castro Lang, San Juan, PR, for appellant.

Rosa Emilia Rodríguez–Vélez, Executive Assistant United States Attorney, Hato Rey, PR, with whom Guillermo Gil, United States Attorney, José A. Quiles–Espinosa, Senior Litigation Counsel, and Nelson José Pérez–Sosa, Assistant United States Attorney, were on brief, for appellee.

Before TORRUELLA, Chief Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

CYR, Circuit Judge.

Appellant José Antonio Nuñez–Rodriguez ("Nuñez") challenges the life sentence imposed upon him for "carjacking", see 18 U.S.C. § 2119(3), and the consecutive five-year sentence imposed for using a firearm in relation to a crime of violence, see id. § 924(c)(1), § 2. We vacate the district court judgment and remand for further proceedings.

## I

## BACKGROUND

At an apartment in Santurce, Puerto Rico, on the evening of June 7, 1994, Nuñez and four other persons laid plans to free two prisoners from the Bayamon Regional Jail. The conspirators agreed to search out a vehicle bearing government license plates to facilitate the planned entry upon the jail premises. During their meeting, Nuñez saw an associate accept delivery of a handgun. Later the same evening, after driving around San Juan for several hours, Nuñez and two associates spotted José Jaime Pierluisi–Urrutia ("Pierluisi"), brother of the Secretary of Justice of the Commonwealth of Puerto Rico, as he returned home around midnight in a car with government plates.

After parking their own car, Nuñez and an associate approached the unsuspecting Pierluisi as he began unloading the trunk. The associate brandished a handgun and demanded the car keys. After relinquishing the keys without protest, Pierluisi was summarily murdered by the associate with a shot to the back of his head as Nuñez prepared to drive away in the Pierluisi vehicle. Following the murder, Nuñez drove the Pierluisi vehicle to the housing development where he lived.

The next day, after learning that the FBI had been inquiring as to his whereabouts, Nuñez presented himself for questioning. Although he readily admitted his involvement in the carjacking, he steadfastly maintained that he had been abducted, threatened with a gun, and forced to participate. During a subsequent consensual search of the apartment where he lived, FBI agents seized a briefcase and passport, as well as clothing and credit cards, belonging to the victim.

After Nuñez was indicted, he offered to cooperate with the government provided he received total immunity from prosecution. More than seven months after his confession, and less than a week prior to the scheduled trial, Nuñez finally pled guilty to the charges without the benefit of a plea agreement. Subsequently he filed a pro se motion to set aside his guilty pleas, which he withdrew following the appointment of new counsel. The district court ultimately sentenced Nuñez to life imprisonment plus sixty months, after refusing downward adjustments for acceptance of responsibility and "minor participation," and rejecting a downward departure request based on "reduced mental capacity."

## II

### DISCUSSION

#### A. *"Acceptance of Responsibility"* (*U.S.S.G. § 3E1.1* )[1]

Nuñez first contends that the district court committed reversible error in refusing to adopt a presentence report ("PSR") recommendation that he receive a three-point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1.[2]

Nuñez maintains that he met his burden of proof under U.S.S.G. § 3E1.1, *see United States v. Gonzales*, 12 F.3d 298, 300 (1st Cir.1993), since all the competent evidence in the PSR was "consistent" with his acceptance of responsibility: he voluntarily surrendered soon after the crime, *see* U.S.S.G. § 3E1.1, comment. (n.1(d)) (Nov. 1994), assisted investigators in recovering the victim's personal possessions, *see id.* (n.1(e)), cooperated with the FBI and entered a "straight" plea (i.e., without exacting a plea bargain), *see United States v. Vance*, 62 F.3d 1152, 1160 (9th Cir.1995), and expressed sincere remorse at the change-of-plea hearing and at sentencing (e.g., crying in court, and stating that he was "sorry" for the victim's family). Nuñez further contends that the district court erred by relying on other factors it deemed "inconsistent" with acceptance of responsibility, including Nuñez' continuing and willful failure to disclose the names of some of his accomplices.[3] This factor, Nuñez maintains, can be relevant *only* to a defendant's entitlement to a § 5K1.1 downward departure for "substantial assistance to [law enforcement] authorities." *See* U.S.S.G. § 5K1.1.[4]

#### 1. *The District Court Sentencing Decision*

In denying Nuñez a downward adjustment under § 3E1.1, the district court apparently relied on two grounds. First, Nuñez delayed his guilty plea for six months, until *five days* before the scheduled trial, thereby presumably leaving the government no alternative but to prepare for trial. *See* U.S.S.G. § 3E1.1, comment. (n.1(g)) (court considers timeliness of defendant's manifestation of acceptance of responsibility) (Nov. 1994). Second, the court noted that during the six-month delay, Nuñez had offered inconsistent versions of the relevant events.[5] *See id.* comment. (n.1(a)) (court considers whether defendant "truthfully admitt[ed] the offense comprising the offense of conviction."). Since a guilty plea does not entitle a defendant to a downward adjustment under § 3E1.1, *see id.* comment (n.3) (guilty plea and "truthful admission" are "significant evidence" of acceptance of responsibility but "may be outweighed by [inconsistent] conduct of the defendant ..."), normally a trial

1. Nunez was sentenced under the November 1994 guidelines, wherein § 3E1.1 provided:
   (a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
   (b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:
   (1) timely providing complete information to the government concerning his own involvement in the offense; or
   (2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,
   decrease the offense level by 1 additional level.
   U.S.S.G. § 3E1.1 (Nov. 1994).

2. The claimed entitlement to a *three*-point downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(b) is frivolous, since the undisputed evidence unmistakably disclosed that Nuñez provided neither "timely" nor "complete" information to the government concerning his own involvement in the offense. U.S.S.G. § 3E1.1(b)(1). Nor did Nuñez provide "timely" notice to "authorities of his intention to enter a plea of guilty, [so as to] permit[ ] the government to avoid preparing for trial ...," *id.* § 3E1.1(b)(2). We therefore limit our discussion to the § 3E1.1(a) claim.

3. Nunez did provide the first names of two accomplices.

4. Because a two-point offense-level reduction under § 3E1.1(b) would have lowered Nuñez' total offense level from 43, CHC I (life imprisonment), to 41, CHC I (324–405 months), *see supra* note 2, any error could not be considered harmless.

5. Initially, Nunez told the FBI that he had been abducted by an unidentified male, forced at gunpoint to drive to the victim's residence, then forced to drive the Pierluisi vehicle from the murder scene. Later, Nunez told the FBI that while visiting at a friend's apartment, he had encountered a group of persons who persuaded him to assist in the prison break scheme.

court's decision to deny a § 3E1.1 adjustment would be affirmed on these grounds. *Id.* comment. (n. 5) ("The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review.").

The district court made other statements during the sentencing hearing, however, which are reasonably understood to indicate that the court declined a § 3E1.1 adjustment on an independent ground; that is, Nuñez' purported inability or ongoing refusal to disclose the names of other collaborators. As the precise import of the district court's statements in this regard is critical, we recite its statements at length.

After describing, as incredible, Nuñez' initial story that he had been abducted by armed strangers, *see supra* p. 3, the district court observed:

> A defendant who accepts responsibility must do more than that when he's involved in a conspiracy and where [ ] human life is involved. He must come forward and identify and help authorities get the other people. He has stated time and time again that he doesn't know these other people.

> Now, he spent with these people some hours in an apartment, planning a crime. He drives around ... cruising in the rear seat while he is telling the public and the Court that he was forced ... to sit on the front seat with the gun pointed at him. When he stepped out of the car, the other ... unidentified male got out of the car with a gun. Now, we don't know whether [Nuñez] was wearing [or] carrying the gun, or the other people [were], ... because the track record of this defendant is that he cannot be believed.

> And therefore for *those* reasons I'm not accepting the two-points downward adjustment for acceptance of responsibility. I don't think the defendant has done that. When he comes forward and identifies the other people, if he does that, then that *might be* a different story. But he's protecting others and that's why he has done all these things.

Tr. at 39–40 (emphasis added). Later, once again after discussing Nuñez' inconsistent versions of the relevant events on June 7, 1994, the district court observed:

> [In his second version,] Nunez rode in the rear seat. So there was no one pointing a gun at him. And for four hours, if he tells the court and the authorities that he hasn't —— he cannot recognize those two —— at least those other two individuals, I'm not going to buy that.... Nunez turned several items [of the victim's property] over to those who he had originally met at the apartment. Again, how could he say that he cannot identify those people? He is protecting them. And I know it. I'm pointing to the defendant.

Tr. at 43–44. Nuñez responded: "I'm afraid." The court did not respond.

Later, in summarizing its guidelines sentencing calculations, the district court added:

> The defendant has not identified —— although the court finds that he can —— the other individuals who participated in the crime. These are considered to have been elements of a strategy to manipulate the judicial proceedings, among other things, towards establishing a tailor-made plea agreement conditioned on his own terms, failing to yield to this sort of bargain, and this occurred at the beginning where the defendant said I'll plead guilty if I get "X" type of sentence.... A defendant qualifies for a [§ 3E1.1] reduction when he truthfully admits the conduct comprising the offense of conviction and does not falsely deny or frivolously contest relevant conduct that the Court has determined to be true and also does not keep to himself the identity of other coconspirators.

Tr. at 46–47. After defense counsel objected to its consideration of the "informer" criterion, the district court responded:

> [M]y point is that *if anyone* commits a crime with one or more persons, knowing those persons, *does not come forward* to the authorities, *giving the names of those persons,* then *you cannot have a full acceptance of responsibility* because that entails precisely a catharsis, a full remorse by disclosing the whole thing, being truthful and not concealing any information how

to identify ... these defendants. I have to say that for defendant's benefit that there is a section 5K in this statute. There's a Rule 35. You have one year to think about it ... and to cooperate with the authorities. But I'm not saying that if you do that I will reconsider, but your counsel knows better than I that —— ... what I mean.... All I'm —— all I'm saying, counsel —— I want to make the record clear —— is that there is what is called a downward departure. I ruled that there is no departure, either upward or downward, right? ... Very well. And I am saying that there is what is called a downward departure, and that's up to the defendant to avail of that of himself, punto, without anything else.... I'm not saying he is getting life because of that. I'm saying that there is that provision in the statute and Rule 35.

Tr. at 53–55 (emphasis added).

Nuñez characterizes the latter explanation for refusing a § 3E1.1 adjustment as an error of law, in that the district court relied upon an eligibility criterion relevant exclusively to § 5K1.1 departures for "substantial assistance to [law enforcement] authorities," *see* U.S.S.G. § 5K1.1.[6] *See, e.g., United States v. McKinney,* 15 F.3d 849, 854 (9th Cir.1994) (§ 3E1.1(a) "focuses on the defendant's sincere remorse for his own conduct, not his assistance in incriminating others"; a "defendant's degree of assistance in the prosecution of a codefendant is relevant only to his entitlement for a departure for substantial assistance under § 5K1.1"); *see also Vance,* 62 F.3d at 1157–58; *United States v. Leonard,* 50 F.3d 1152, 1158–59 (2d Cir.1995).

### 2. Standard of Review

■ Sentencing Guideline interpretations are reviewed *de novo, see United States v. Bennett,* 60 F.3d 902, 904 (1st Cir.1995), whereas the subsidiary findings of fact, including the ultimate determination as to whether the defendant sincerely "accepted

responsibility" for the charged offense and relevant conduct, are reviewed only for clear error, *see United States v. Crass,* 50 F.3d 81, 83 (1st Cir.1995).[7]

■ . Even if we were to determine that the sentencing court committed error, however, its sentence would not be set aside unless it affected defendant's substantial rights. *See* Fed.R.Crim.P. 52(a); *see also Williams v. United States,* 503 U.S. 193, 202–03, 112 S.Ct. 1112, 1120–21, 117 L.Ed.2d 341 (1992); *United States v. Curran,* 926 F.2d 59, 62 (1st Cir.1991). A sentencing decision based in part on an invalid ground may be affirmed if "excision of the improper ground does not obscure or defeat the reasoning of the district court," and we are "left, on the record as a whole, with the definite and firm conviction that removal of the inappropriate ground would not be likely to alter the district court's view of the sentence rightfully to be imposed." *United States v. Diaz–Bastardo,* 929 F.2d 798, 800 (1st Cir.1991) (departure decision); *see also United States v. Diaz,* 39 F.3d 568, 571 (5th Cir.1994) (same analysis, reviewing denial of § 3E1.1 reduction based on improper factor).

### 3. The "Informer" Criterion and Section 3E1.1

■ The question whether U.S.S.G. § 3E1.1 permits the "informer" criterion to be considered in determining "acceptance of responsibility" is unsettled at best. *Compare McKinney,* 15 F.3d at 854 (holding that "informer" criterion is "relevant only" to § 5K1.1 departure) *with United States v. Apple,* 915 F.2d 899, 913 n. 23 (4th Cir.1990) (upholding use of "informer" criterion under pre-November 1989 guidelines, but skirting question whether subsequent § 3E1.1 amendments foreclose it) *with United States v. Cross,* 900 F.2d 66, 70 n. 1 (6th Cir.1990) (expressing "uncertainty") (dictum) *with United States v. Tellez,* 882 F.2d 141, 143 (5th Cir.1989) (upholding denial of adjust-

---

**6.** U.S.S.G. § 5K1.1 reads, in part: "Upon motion by the government stating that the defendant has provided substantial assistance in the investigation or prosecution *of another person* who has committed an offense, the court may depart from the guidelines." (Emphasis added.)

**7.** Nuñez preserved this issue by lodging a contemporaneous objection at sentencing.

ment for acceptance of responsibility for defendant who "never identified the person or persons who had hired him to smuggle the contraband into the United States").

Turning first to the specific guideline language itself, *see United States v. Perez–Franco*, 873 F.2d 455, 458 (1st Cir.1989), we find no explicit indication that the Sentencing Commission intended to preclude consideration of the "informer" criterion in appropriate circumstances. Moreover, the U.S.S.G. § 3E1.1 commentary expressly provides that its listing of relevant considerations for a two-point adjustment under subsection (a) is nonexhaustive. *See* U.S.S.G. § 3E1.1, comment. (n.1(a)-(g)) ("include, but are not limited to, the following . . . .").[8] Thus, the absence of an explicit reference, in section 3E1.1 itself, to "voluntary assistance to authorities in implicating other criminal participants" is not conclusive.

■ Although the *McKinney* court noted that section 3E1.1 in general, and the nonexhaustive listing in its commentary in particular, focus *solely* on the defendant's disclosures relating to his own criminal conduct, that is, his *"personal* responsibility," *see McKinney*, 15 F.3d at 854 (citing U.S.S.G. § 3E1.1) (emphasis added), personal responsibility may be manifested in various ways and the acceptance-of-responsibility determination under section 3E1.1 necessarily envisions a fact-specific inquiry in each case, *see United States v. Talladino*, 38 F.3d 1255, 1258 (1st Cir.1994). Moreover, by prescribing a nonexhaustive listing in its commentary, the Sentencing Commission left sentencing courts the latitude to consider all reliable, probative indicia tending to demonstrate, or countervail, the genuineness of the particular defendant's remorse.

We can discern no sound basis for a general rule barring a defendant's voluntary cooperation in truthfully identifying criminal associates from consideration by the sentencing court in determining the genuineness of the

defendant's remorse. Rather, unless otherwise foreclosed by the Sentencing Guidelines, *but see infra,* we think a defendant's refusal to provide such cooperation may be weighed, along with all other relevant evidence, in determining "acceptance of responsibility" under U.S.S.G. § 3E1.1. Nor do we think this basic premise is rendered unsound by the concern that "[a] cunning but not contrite defendant may buy his way out of trouble by providing evidence against someone else, and an entirely contrite defendant may out of fear, ignorance of information useful to the prosecutors, or other reason, fail to provide assistance." *Vance*, 62 F.3d at 1157. To be sure, such "informing" will not always prove a reliable or *bona fide* indicium of the defendant's remorse. Be that as it may, however, similar credibility determinations and inferential findings are consigned routinely to sentencing courts, and, without more, present no sound basis for a *per se* rule barring the "informer" criterion from consideration under section 3E1.1, as one more among the totality of the circumstances that the sentencing court considers in assessing a defendant's true motives for "informing" (e.g., sentence manipulation), or not "informing" (e.g., lack of remorse, inability to inform, desire to protect accomplices for personal or illicit reasons, or genuine fear of retaliation).

Nuñez suggests, however, that the narrowly focused language in U.S.S.G. § 3E1.1(b) (three-point reduction for acceptance of responsibility) requiring, *inter alia,* that the defendant "timely provid[e] complete information to the government concerning *his own involvement* in the offense," *see supra* note 1, necessarily forecloses consideration of the "informer" criterion under section 3E1.1. We do not agree. Subsection (b) requires that a defendant *first* meet the relevant criteria prescribed in subsection (a), and since the "informer" criterion is not barred by the nonexhaustive listing included in the Commission commentary to subsection (a), *see*

---

8. These indicia are: "(a) voluntary termination or withdrawal from criminal conduct or associations; (b) voluntary payment of restitution prior to adjudication of guilt; (c) voluntary and truthful admission to authorities of involvement in the offense and related conduct; (d) voluntary surrender to authorities promptly after commission of the offense; (e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense; (f) voluntary resignation from the office or position held during the commission of the offense; and (g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility."

U.S.S.G. § 3E1.1, comment. (n.1(a)-(g)), it may be weighed in the balance under the threshold subsection (a) inquiry. Nothing in subsection 3E1.1(b) purports to supplant the requirements of subsection (a). Instead, the subsection (a) requirements are explicitly made independent. Thus, there is no sound basis for the view that the imposition of additional requirements in subsection (b) alters the threshold factors appropriate for consideration under subsection (a). A defendant must satisfy either subsection (b)(1) or (b)(2), as well as subsection (a), in order to qualify for the extra-point adjustment permitted under § 3B1.1(b).

Section 5K1.1 likewise focuses on the "informer" criterion, even to the exclusion of other criteria, and imposes additional conditions precedent to sentence mitigation such as the requirement that a defendant's cooperation in identifying accomplices be sufficiently comprehensive to constitute "substantial assistance" as certified by a government motion recommending a downward departure. Commentary to U.S.S.G. § 5K1.1 provides that

> [t]he sentencing reduction for assistance to authorities shall be considered *independently* of any reduction for acceptance of responsibility. Substantial assistance is directed to the investigation and prosecution of criminal activities by persons other than the defendant, while acceptance of responsibility is directed to the defendant's affirmative recognition of responsibility for his own conduct.

U.S.S.G. § 5K1.1, comment. (n.2) (emphasis added).

At first blush this commentary may seem to support Nuñez' contention, but it is far from conclusive. At most it indicates simply that the sentencing court is to undertake *sequential* inquiries under sections 3E1.1 and 5K1.1, since the two independent standards require the court to balance and weigh different criteria. Unlike section 5K1.1, moreover, section 3E1.1 requires the sentencing court to balance *many* divergent factors, consistent and inconsistent with acceptance of responsibility. Nothing in application note 2 to section 5K1.1 suggests, however, that these sequential inquiries may not in-volve overlapping criteria, in particular the "informer" criterion. *See United States v. Singh,* 923 F.2d 1039, 1044 (3d Cir.) (§§ 3E1.1 and 5K1.1 are to be assessed "independently," but involve "related concepts"), *cert. denied,* 500 U.S. 937, 111 S.Ct. 2065, 114 L.Ed.2d 469 (1991).

Since reason and common sense suggest that a particular criterion may bear relevance to the inquiries required in assessing a sentencing factor under more than one guideline, and no sentencing guideline indicates otherwise, we are unable to credit Nuñez' contention that the "informer" criterion may not be considered under section 3E1.1. *Compare* U.S.S.G. § 3C1.1 (upward offense-level adjustment for obstruction of justice) *with* § 3E1.1, comment. (n.4) ("Conduct resulting in an enhancement under § 3C1.1 ... ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply."). For example, assistance in identifying, apprehending, or prosecuting accomplices might buttress a cooperating defendant's statements of remorse under section 3E1.1, without regard to whether the government considers the cooperation sufficiently helpful to warrant a "substantial assistance" departure under section 5K1.1.

Finally, section 5K1.2 provides that "[a] defendant's refusal to assist authorities in the investigation of other persons may not be considered as an aggravating sentencing factor." The October 1988 version of U.S.S.G. § 5K1.2 included a single commentary: "The Commission ... rejected the use of a defendant's refusal to assist authorities as an aggravating sentencing factor. Refusal to assist authorities based upon continued involvement in criminal activities and association with accomplices may be considered, however, in evaluating a defendant's sincerity in claiming acceptance of responsibility." The Sentencing Commission deleted this commentary in November 1989, explaining that it intended "to delete the *unnecessary* commentary containing an *unclear* example." U.S.S.G.App. C, amend. 292, at 178 (November 1995) (emphasis added).

The current version of section 5K1.2 does not preclude the "informer" criterion under section 3E1.1. First, given its location in the guidelines section dealing with "departures," section 5K1.2 clearly forbids reliance on a defendant's failure to identify accomplices as a basis for an upward *departure*. But it neither expressly nor impliedly forbids such reliance for purposes of sentencing *adjustments* such as section 3E1.1. In all events, since any adjustment under section 3E1.1 can only be *downward*, the "informer" criterion under section 3E1.1 can never constitute an aggravating sentencing factor, only a mitigating factor. *See, e.g., United States v. Gordon*, 895 F.2d 932, 936–37 (4th Cir.) (§ 3E1.1 reduction bespeaks "mitigation," not aggravation), *cert. denied*, 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990).

Notwithstanding the November 1989 amendment, it remains clear that the commentary to section 5K1.2 contemplated that sentencing courts were to consider the "informer" criterion under section 3E1.1 in appropriate circumstances. Significantly, the 1988 version purported to allow the court to deny a section 3E1.1 adjustment where the defendant did not identify accomplices because his criminal associations were ongoing. Further, it seems that the 1989 amendment deleted the "unclear" commentary not because the Commission had altered its view on the propriety of the section 3E1.1 practice described in the commentary, but because it concluded that the current text in sections 3E1.1 and 5K1.1 was sufficiently clear to support such a sentencing practice —— without further elaboration. We therefore conclude that the 1989 amendment was meant to clarify, not to effect a substantive change in sentencing policy. *See United States v. Campbell*, 61 F.3d 976, 985 (1st Cir.1995) (court should presume that Commission did not intend substantive change where guideline amendments are unaccompanied by language declaring intention to abandon earlier sentencing practice), *cert. denied*, —— U.S. ——, 116 S.Ct. 1556, 134 L.Ed.2d 657 (1996). This conclusion is confirmed by the Commission's failure to effect a conforming 1989 modification to the nonexhaustive listing in section 3E1.1. *See supra* note 8.

Insofar as *McKinney, Vance,* and *Leonard* might be thought to suggest a *per se* rule, *but see McKinney,* 15 F.3d at 854 ("Where the defendant's refusal to assist authorities in the prosecution of his codefendants does not detract from his clear contrition for his own actions, he is still entitled to the acceptance of responsibility reduction."), we must respectfully disagree. In appropriate circumstances a sentencing court is permitted to consider, as relevant evidence of the defendant's sincerity in accepting responsibility for his own crimes, at least whether a defendant truthfully has identified accomplices in the crimes to which the defendant has pled guilty. For example, where a defendant does not disclose accomplices because he has elected to continue his criminal associations, the sentencing court may consider such conduct along with any other indicia of failure to accept responsibility. On the other hand, should the court determine that a defendant has not identified his accomplices because he genuinely fears retaliation, but that the defendant's conduct otherwise demonstrates genuine remorse, a downward adjustment under section 3E1.1 might yet be found appropriate, as the sentencing court's balancing and weighing of the relevant criteria under section 3E1.1 is entitled to great deference on appeal. U.S.S.G. § 3E1.1, comment. (n.5).

### 4. The "Acceptance of Responsibility" Finding

The district court apparently relied on two proper grounds for its finding that Nuñez had not demonstrated acceptance of responsibility: (i) the six-month delay in entering a guilty plea, *see* U.S.S.G. § 3E1.1, comment. (n.1(g)) (timeliness factor), and (ii) the inconsistent stories given by Nuñez, *see id.* (n.1(a)) (truthful-admission factor).

In addition, the district court discussed at considerable length Nuñez' failure to assist the FBI in identifying his accomplices. *See supra* Section II.A.1. The court appropriately questioned Nuñez' motives for not disclosing the identities of his associates. Its misgivings were prompted by Nuñez' inconsistent versions of the carjacking, and were explicitly connected to its finding that Nuñez, and by extension, his insistence that he had

accepted responsibility, were not credible. Nuñez had given uncorroborated and inconsistent explanations for not identifying his accomplices: first, he claimed that he had not known them before the day of the carjacking, and never learned their names; and, second, he was "afraid" to identify them. *See Gonzales,* 12 F.3d at 300 (defendant bears burden of proof under § 3E1.1). The district court supportably found that Nuñez' true motive was to "protect" his accomplices, a motive which —— when *coupled* with his two pretextual motives for refusing to "inform" (memory lapse and/or fear) —— belied a genuine acceptance of responsibility.

■ Nonetheless, other observations by the district court remain open to the plausible understanding that a defendant must *always,* at least where an offense results in death, "inform" on his accomplices in order to qualify for a § 3E1.1 adjustment, regardless of any other circumstances in the case:

A defendant who accepts responsibility *must* do more than that when he's involved in a conspiracy and *where [ ] human life is involved.* He *must* come forward and identify and help authorities get the other people....

A defendant qualifies for a [§ 3E1.1] reduction *when* he truthfully admits the conduct comprising the offense of conviction and does not falsely deny or frivolously contest relevant conduct that the Court has determined to be true *and* also *does not keep to himself the identity of other coconspirators.* ...

[M]y point is that if anyone commits a crime with one or more persons, knowing those persons, does not come forward to the authorities, giving the names of those persons, then you *cannot have* a full acceptance of responsibility because that entails precisely a catharsis, a full remorse by disclosing the whole thing, being truthful

and not concealing any information how to identify ... these defendants.

As we have indicated, however, such a *per se* requirement would prove as inconsistent with the letter and spirit of section 3E1.1 as its counterpart, *see, e.g., McKinney,* 15 F.3d at 854. Consequently, we are unable to conclude with confidence whether the district court deemed Nuñez' failure to identify his criminal associates as sufficient, by itself, to preclude an adjustment under section 3E1.1, without regard to whether Nuñez knew the names of his accomplices or feared retaliation.

Assuming the district court meant that mitigating considerations are never material under section 3E1.1, it erred. Moreover, insofar as the court envisioned a *per se* bar to its consideration of mitigating circumstances, the present record precludes reliable "harmless error" analysis, since we cannot say with any confidence that the court would not have disallowed a section 3E1.1 adjustment solely because Nuñez refused to identify his criminal associates.

The government points to the district court statement that it was *"not saying [Nuñez] is getting life because of* ... [his failure to 'inform']." Yet the literal import of the district court's language is not necessarily equivalent to an assurance that Nuñez' life sentence had nothing to do with his refusal to identify his criminal associates. Thus, the quoted statement does not cure the inherent ambiguity created by the categorical remarks the court made earlier. Consequently, on the record as a whole, we cannot say that we are left "with the definite and firm conviction that removal of the inappropriate ground would not be likely to alter the district court's view of the sentence rightfully to be imposed." *See Diaz,* 39 F.3d at 568. These ambiguities counsel a remand for resentencing for clarification,[9] and further factfinding

---

9. Another statement by the district court likewise necessitates a remand. It noted, based on a review of the Rule 11 hearing transcript that Nuñez had asked to be "forgiven by the [victim's] family," but "didn't say he was remorseful, that he was willing to cooperate." Tr. at 39. Our review of the transcript discloses that Nuñez stated: "I would like to ask forgiveness from the family of the young man, (defendant crying). I

know what suffering is because I have a mother, I have a father, and *I'm very sorry* and I would like them to forgive me." Tr. at 21 (emphasis added). Thus, the district court's compound statement ("didn't say he was remorseful, that he was willing to cooperate") may have been either yet another reference to the section 3E1.1 "informer" criterion, or simply a mistaken understanding that Nuñez had never even *stated* that

**24**

as appropriate. *United States v. Berzon,* 941 F.2d 8, 20 (1st Cir.1991).

## B. *The "Minor Participant" Adjustment*

Next we consider whether the district court erred in declining a two-point adjustment under the "minor participant" guideline. *See* U.S.S.G. § 3B1.2(b).[10] Nuñez claims it was an error of law to assess his participation exclusively through reference to the hypothetical "average participant" in a carjacking and murder, rather than with reference to his coconspirators. *See United States v. Brandon,* 17 F.3d 409, 460 (1st Cir.), *cert. denied,* — U.S. —, 115 S.Ct. 80, 130 L.Ed.2d 34 (1994); *United States v. Gregorio,* 956 F.2d 341, 344 (1st Cir.1992) ("Role-in-the-offense adjustments depend . . . not only on the comparative conduct of persons jointly engaged in criminal activity, but also on comparing each offender's actions and relative culpability with the elements of the offense.") (citations omitted).

■ Nuñez mischaracterizes the district court rationale. The court stated very clearly: "A defendant is not a minor participant *merely because* he might be less culpable than others, co-conspirators. . . . Rather he must be less culpable than the average participant in similar offenses." (Emphasis added.) This statement—especially the phrase "merely because"—negates the suggestion that the district court found actual coconspirator comparisons immaterial to the *Brandon–Gregorio* inquiry. Instead, the court acknowledged, as it explained more fully later, that U.S.S.G. § 3B1.2(b) entails a bifocal analysis.[11]

■ We also reject the claim that the evidence does not support the district court ruling. Its fact-specific ruling is reviewed for clear error only, and with "considerable respect" for a sentencing court's superior vantage point. *United States v. Ocasio,* 914

F.2d 330, 333 (1st Cir.1990); *see also Gregorio,* 956 F.2d at 344. We find no clear error. The evidence revealed that Nuñez voluntarily participated in planning the jail break-out, witnessed the delivery of a revolver to be used in the carjacking, drove around with two coconspirators for several hours searching for an appropriate vehicle, approached the victim with an armed associate, and, as agreed, drove the Pierluisi vehicle from the carjacking scene, despite having heard the fatal gunshot. Finally, the evidence indicates that Nuñez played a more active role in the carjacking-murder than at least one other associate, who merely waited in the car while the shooter, with Nuñez nearby, approached and killed Pierluisi.

## C. *The Requested "Reduced Mental Capacity" Departure*

Finally, Nuñez argues that the district court erred in refusing a downward departure under U.S.S.G. § 5K2.13, *Diminished Capacity* (Policy Statement), which provides:

If the defendant committed a *non-violent offense* while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect *the extent to which reduced mental capacity contributed to the commission of the offense,* provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

U.S.S.G. § 5K2.13, p.s. (emphasis added). Essentially, Nuñez relied on a 1984 diagnosis of borderline mental retardation and paranoid schizophrenia, which conditions so affected his ability to make common-sense judgments, that he was unable to resist his coconspirators' requests that he join in the armed carjacking, or to foresee that a murder might ensue. Recognizing that we normally lack jurisdiction to review a district court's discretionary refusal to make a down-

he was "sorry" at the time he pled guilty. The present record does not permit us to make a reliable determination.

10. "A minor participant means any participant who is less culpable than most other participants." U.S.S.G. § 3B1.2, comment. (n.3). An adjustment is allowed "for a defendant who plays a part in committing the offense that makes him

substantially less culpable than the average participant." *Id.* § 3B1.2, comment. (backg'd.).

11. The court stated: "In this case [Nuñez] planned the offense. He participated in the planning of the offense. He cruised with these individuals for about two hours."

 

ward departure, *see United States v. Grand-maison,* 77 F.3d 555, 560 (1st Cir.1996), Nu-ñez instead argues that the court's refusal to depart was premised on its incorrect inter-pretation of the phrase "non-violent offense." *Id.*[12]

■ We need not linger over this claim. Without regard to whether the district court misapprehended the meaning of "non-violent crime," *see, e.g., United States v. Weddle,* 30 F.3d 532, 537–40 (4th Cir.1994) (discussing circuit split concerning proper interpretation of "non-violent offense"), it expressly ruled —— after defense counsel cited to the 1984 psychiatric reports —— that it believed Nu-ñez did not suffer from the required "signifi-cantly reduced mental capacity" at the time of the 1994 carjacking:

> This defendant had this meeting with his friend's nephew where they sat there in this apartment discussing precisely a car-jacking, stealing of a car, to commit anoth-er crime [i.e., the jail break], and he was there. And then they start cruising around, finding a victim until they found him, found the victim. So ... [it] [s]eems to me that this is totally inconsistent with the diminished capacity to commit a crime.

Tr. at 22. The court pointed out that Nuñez had admitted to long-term, daily use of mari-juana, which would tend to support the con-clusion that any diminished capacity he might have suffered on June 7, 1994 "re-sult[ed] from voluntary use of drugs or other intoxicants." U.S.S.G. § 5K2.13, p.s.

We thus lack appellate jurisdiction of this claim. "[I]f the [sentencing] judge says, in effect, ... that 'this circumstance [viz., "sig-nificantly reduced mental capacity not result-

ing from voluntary use of drugs or other intoxicants"] of which you speak has not been shown to exist in this case,' [then] ... no appeal lies." *United States v. Pierro,* 32 F.3d 611, 619 (1st Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 919, 130 L.Ed.2d 799 (1995); *see also United States v. Regan,* 989 F.2d 44, 45 (1st Cir.1993) (defendant has the burden of proof under section 5K2.13). Nu-ñez does not contend that the court misap-prehended the criteria for determining whether he suffered from a "significantly reduced mental capacity." *Cf. Grandmai-son,* 77 F.3d at 561 (jurisdiction lies where district court misapprehended the relevant criteria for ascertaining "aberrant behav-ior").[13] Since some causative reduction in mental capacity is the *sine qua non* of any downward departure under section 5K2.13, whether the murder-carjacking be deemed "violent" or "non-violent," we need not —— indeed we cannot —— decide whether the court also relied on an incorrect interpreta-tion of "non-violent offense."

*The sentence is vacated, and the case remanded to the district court for resen-tencing, consistent with our opinion and mandate.*

---

12. In essence, Nunez argues that there is an inherent conflict between §§ 2A1.1 and 5K2.13. The former section increased Nunez' base of-fense level from 22 to 43 because death resulted from the carjacking. *See* U.S.S.G. § 2A1.1, com-ment. (n.1); 2B3.1(c). Section 2A1.1 also notes, however, that a downward departure may be warranted where "the defendant did not cause the death intentionally or knowingly." Nunez says this is inconsistent with the district court's interpretation of § 5K1.1, i.e., that it forbids de-partures for anything but "non-violent" crimes.

Whatever its questionable merits, we lack juris-diction to consider this claim. *See infra.*

13. While it is unnecessary to decide the sound-ness of the district court's factual conclusion, we would note that various psychiatric evaluations of Nuñez following his arrest concluded that he did not suffer from any abnormal mental disease or defect on the date of the carjacking, and that he was capable of appreciating the consequences of his actions.