<head>

<title>USCA1 Opinion</title>

<style type="text/css" media="screen, projection, print">

<!--

@import url(/css/dflt_styles.css);

-->

</style>

</head>

<body>

                 United States Court of Appeals
                     For the First Circuit
                      ____________________

No. 98-1707

                         UNITED STATES,

                           Appellee,

                               v.

                          ADAM BROWN,

                     Defendant, Appellant.

                      ____________________

          APPEAL FROM THE UNITED STATES DISTRICT COURT

               FOR THE DISTRICT OF MASSACHUSETTS

        [Hon. Reginald C. Lindsay, U.S. District Judge]
        [Hon. Edward F. Harrington, U.S. District Judge]

                      ____________________

                             Before

                    Torruella, Chief Judge,

                 Coffin, Senior Circuit Judge,

                   and Boudin, Circuit Judge.

                     _____________________

   Paul F. Markham, by appointment of the Court, for appellant.
   Donald L. Cabell, Assistant United States Attorney, with whom
Donald K. Stern, United States Attorney, was on brief, for
appellee.

                      ____________________

                        March 3, 1999
                      ____________________

         TORRUELLA, Chief Judge.  Before the Court is Defendant-
appellant Adam Brown's appeal of: (1) the denial of his motion to
suppress evidence found during his arrest, and (2) his sentence of
100 months imprisonment for possession of a stolen firearm.  We
affirm the judgment of the district court in both respects.
                           BACKGROUND
         On May 3, 1996, plainclothes Boston police officers Brian
Black, Joseph Freeman, and Susan Antonucci were on patrol in an
unmarked police car in the Roxbury area of Boston, Massachusetts.  
As they approached the apartment building located at 150 Walnut
Avenue, they observed Brown and another male leaving the building.  
The officers decided to speak with the two individuals, so they
stopped the car.  Officer Black claims that he said to them,
"Boston Police.  May I have a word with you?"  When the men turned
around and began to walk back toward the apartment building,
Officer Black got out of the car and again said, "Boston Police.  
May I speak with you?"  Brown then walked back inside the apartment
building, and the other individual walked around the side of the
building.  Officer Black followed Brown into the building and saw
Brown walking up a stairwell.  Officer Black started up the stairs
and again said, "Boston Police.  May I have a word with you?"  At
this point, Brown pushed Officer Black and tried to flee up the
stairs.  Officer Black then tackled Brown, and Officers Antonucci,
Freeman, and William O'Hara, who was already in the building lobby
on an unrelated matter, assisted in arresting Brown.  During
Brown's arrest, the officers found a .357 caliber revolver -- later
found to be stolen -- on Brown's person.
         On July 17, 1996, Brown was charged with possession of a
firearm by a felon in violation of 18 U.S.C.  922(g)(1).  Brown
moved to suppress the firearm and other evidence recovered at his
arrest.  He denied pushing Officer Black and argued that the
officers possessed neither probable cause to arrest nor reasonable
suspicion to warrant an investigative stop.  After hearing
testimony from Officers Black, Antonucci, and O'Hara, the district
court denied Brown's motion to suppress.  The court found that,
while the events that occurred prior to the altercation on the
stairwell would not have been sufficient to justify an arrest or
investigative stop, once Brown pushed Officer Black on the
stairwell, Officer Black had probable cause to arrest Brown for
assault and battery on a police officer.
    After the government filed a superseding information,
Brown waived indictment and entered a conditional guilty plea to
one count of possession of a stolen firearm in violation of 18
U.S.C.  922(j), reserving the right to appeal the denial of his
motion to suppress and his sentence.  At sentencing, Brown's base
offense level was set at 24, pursuant to U.S.S.G.  2K2.1(a)(2),
because Brown had at least two prior felony convictions of either
a crime of violence or a drug offense.  Over Brown's objection, the
district court also applied a two-level enhancement under
2K2.1(b)(4) because the firearm was stolen.  After applying a
two-level reduction for acceptance of responsibility and
determining that Brown qualified for Criminal History Category VI,
the court found the applicable sentencing range to be 100-125
months.  Brown was sentenced to 100 months imprisonment.  On
June 10, 1998, Brown filed a timely notice of appeal.
                           DISCUSSION
I.  The District Court's Denial of Brown's Motion to Suppress
    Brown first argues that his arrest was made in violation
of the Fourth Amendment, requiring suppression of the firearm
seized from him at the time of his arrest.  In his motion to
suppress below, Brown argued that he did not push Officer Black and
that the officers did not have probable cause or reasonable
suspicion to stop him based solely on the fact that he walked away
from officers in plain clothes.  On appeal, Brown does not dispute
that he pushed Officer Black.  Rather, he now argues that he acted
reasonably in pushing Officer Black and therefore that there was
not probable cause to arrest him even after he did so.  This is the
first time Brown has advanced this argument.
    We review the denial of a motion to suppress under a
bifurcated standard.  See United States v. Cardoza, 129 F.3d 6, 13
(1st Cir. 1997).  We review the district court's findings of fact
for clear error and review the district court's conclusions of law
de novo.  See id.  However, where a defendant has not first raised
an issue below, we review for plain error only.  See United Statesv. Shea, 150 F.3d 44, 48 (1st Cir.), cert. denied, 119 S. Ct. 568
(1998).
    Brown claims that he reasonably feared for his safety and
had the right to defend himself when Officer Black followed him
into the building.  From this, he argues that Officer Black had no
probable cause to arrest him for assault and battery on a police
officer.  This argument fails because Brown's alleged fear for his
safety does not negate the probable cause perceived by Officer
Black.  The inquiry into probable cause to arrest focuses on what
the officer knew at the time of arrest.  See United States v.
Bizier, 111 F.3d 214, 216 (1st Cir. 1997).  The fact that Brown may
not have known that Officer Black was a police officer may serve as
a defense to a subsequent charge of assault and battery on a police
officer, see Commonwealth v. Francis, 511 N.E.2d 38, 40 (Mass. App.
1987), but it does not invalidate the arrest because it has no
impact on the information possessed by Officer Black at the time of
the arrest.  See Michigan v. DeFillipo, 443 U.S. 31, 36 (1979)
("The validity of the arrest does not depend on whether the suspect
actually committed a crime; the mere fact that the suspect is later
acquitted of the offense for which he is arrested is irrelevant to
the validity of the arrest."). Officer Black was pushed by Brown
after having identified himself as a police officer.  This clearly
provided him with probable cause to believe that Brown had
committed an assault and battery on a police officer.
    Brown also notes that the district court found that there
was no valid basis to stop him at any time prior to the incident on
the stairwell.  The government concedes as much, but this is of no
assistance to Brown.  There is no claim that Brown was seized until
after he pushed Officer Black, nor could there be.  See Californiav. Hodari D., 499 U.S. 621, 626 (1991) (rejecting contention that
a pursuit qualifies as a "seizure" and stating that a seizure
requires either physical force or submission to the assertion of
authority); United States v. Sealey, 30 F.3d 7, 9 (1st Cir. 1994)
(stating that a seizure occurs when a citizen's liberty has been
restrained by means of physical force or a show of authority and
holding that no seizure occurred when officers shouted, "Hey,
Steven, what's up?" from a police cruiser).  Because the probable
cause inquiry focuses on what the officer knew at the time of the
arrest, see Bizier, 111 F.3d at 216, it is immaterial whether
probable cause to arrest existed prior to the altercation on the
stairwell.   
    Brown apparently attempts to argue that Officer Black
needed probable cause or reasonable suspicion in order to enter the
lobby of the apartment building.  However, "[i]t is now beyond
cavil in this circuit that a tenant lacks a reasonable expectation
of privacy in the common areas of an apartment building."  United
States v. Hawkins, 139 F.3d 29, 32 (1st Cir.) (internal footnote
added) (citations omitted), cert. denied, 119 S. Ct. 566 (1998).  
Therefore, Officer Black's entry into the lobby of the apartment
building did not violate the Fourth Amendment.  See United Statesv. Cruz Pagn, 537 F.2d 554, 557-58 (1st Cir. 1976) (holding that
a person cannot have a reasonable expectation in a common parking
garage of an apartment building and therefore that the officers'
entry into that garage did not violate the Fourth Amendment).  
    Finally, Brown's counsel argued at oral argument, without
any supporting authority, that an officer should not be allowed to
manufacture probable cause by "accosting" a suspect in order to
provoke a reaction, which then conveniently provides probable cause
to arrest the suspect.  While this argument might provide an
intriguing question in some contexts, this is clearly not one of
those contexts.  Officer Black did not violate the Fourth Amendment
or otherwise provoke Brown prior to being pushed on the stairwell
by Brown; he merely followed Brown into the common area of a
building and requested to speak with him.  We cannot agree with
Brown that his assault on Officer Black was a "natural consequence"
of Officer Black's actions or that Brown had the "right to defend
himself with impunity" once Officer Black asked to speak to him.  
Nor can we find that an officer has provoked a suspect in order to
manufacture probable cause merely by asking to speak with him.  As
a result, we find no error in the district court's denial of
Brown's motion to suppress.

II.  The District Court's Enhancement of Brown's Offense Level
    Under U.S.S.G.  2K2.1(b)(4)
    Brown's second argument is that the district court should
not have applied a two-level increase in his offense level under
U.S.S.G.  2K2.1(b)(4).  We review interpretations of the
sentencing guidelines de novo.  See United States v. Nez-
Rodrguez, 92 F.3d 14, 19 (1st Cir. 1996).
     Subsection (b)(4) provides for a two-level enhancement
if the firearm involved was stolen or had an altered or obliterated
serial number.  Commentary Note 12 to  2K2.1 instructs that the
subsection (b)(4) enhancement should not be applied for a stolen
firearm if: (1) the only offense to which  2K2.1 applies for a
given defendant is 18 U.S.C.  922(j), and (2) the defendant's base
offense level is determined under subsection (a)(7).  Commentary
Note 12 goes on to state that the (b)(4) enhancement is not applied
in such a situation because the base offense level has already
taken into account that the firearm was stolen.  Because the
district court calculated Brown's base offense level under
subsection (a)(2), not (a)(7), the court found that Commentary Note
12 was not applicable.  Therefore, the district court enhanced
Brown's offense level by two levels under subsection (b)(4).
    Brown claims that the district court "double-counted" the
stolen nature of the firearm by calculating his base offense level
under  2K2.1 because he pled guilty to possession of a stolen
firearm in violation of 18 U.S.C.  922(j), and then enhancing that
offense level with  2K2.1(b)(4) because the firearm was stolen.
The Ninth Circuit recently rejected this exact "double-counting"
argument in United States v. Turnipseed, 159 F.3d 383, 385-86 (9th
Cir. 1998).  In that case, the court denied the "double-counting"
claim by finding that the district court properly applied  2K2.1,
including subsection (b)(4) and Commentary Note 12.  See id. at
386.  The court did not specifically discuss whether the possession
of a stolen weapon was "double-counted" in calculating the
defendant's sentence.
    We agree with the Ninth Circuit's implicit holding that
applying the subsection (b)(4) enhancement to an individual in
Brown's position does not constitute "double-counting."  Sentencing
Guideline  2K2.1 encompasses offenses involving: (1) the unlawful
receipt, possession, or transportation of firearms or ammunition,
and (2) prohibited transactions involving firearms or ammunition.
It is not necessary that the firearms involved were stolen for the
defendant to be sentenced under  2K2.1.  Thus, it cannot be said
that the district court considered the stolen nature of the firearm
by sentencing Brown under the broad  2K2.1 sentencing guideline.  
    It is clear that a sentencing court takes into account
whether the firearm was stolen when a defendant is convicted of
possession of a stolen firearm under  922(j) and the court
calculates the defendant's base offense level under subsection
(a)(7).  See Commentary 12, U.S.S.G.  2K2.1.  Subsection (a)
provides eight categories for calculating the base offense level
applicable to offenses covered under  2K2.1.  Subsections (a)(1)-
(a)(6) provide six different base offense levels for different
combinations of three aggravating factors: (1) whether a type of
particularly dangerous firearm was involved; (2) the defendant's
criminal history; and (3) whether the defendant is a "prohibited
person."   If none of those factors is present, the defendant is
given a base offense level under either subsection (a)(7) or
(a)(8).  The lower base offense level of the two is prescribed
under subsection (a)(8), which is applicable for certain
transportation or record-keeping violations which need not involve
stolen firearms.  Subsection (a)(7) provides a higher base offense
level for all other offenses, including possession of a stolen
firearm in violation of  922(j). Therefore, for an individual
convicted under  922(j), if none of the aggravating factors
applies, the sentencing court's application of the higher base
offense level of subsection (a)(7) takes into account the stolen
nature of the firearm.
    Brown's base offense level, however, was not calculated
under subsection (a)(7).  Brown's base offense level was calculated
under subsection (a)(2) because Brown had at least two prior felony
convictions of either violent crimes or drug crimes.  Subsection
(a)(2) is applicable for all crimes to which  2K2.1 applies --
whether the firearm was stolen or not -- so long as the proper
aggravating factors are present.  Therefore, the stolen nature of
the firearm was not considered in calculating Brown's base offense
level, meaning that subsequently considering the stolen nature of
the firearm in applying subsection (b)(4) was not "double-
counting."  Therefore, the district court properly enhanced Brown's
offense level under subsection (b)(4).
                           CONCLUSION
    Based on the foregoing, the district court's denial of
Brown's motion to suppress and application of the sentencing
guidelines are AFFIRMED.

</body>

</html>